UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES DISTRICT COURT FILED NOV 20 2026 ANDREW W. MOELLER, CLERK WESTERN DISTRICT OF NY

SHANNON G.,[1]

Plaintiff,

v.

6:24-CV-6317 (JLS)

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

## DECISION AND ORDER

Plaintiff Shannon G. brought this action under 42 U.S.C. § 1383(c)(3) of the Social Security Act, seeking review of the decision of the Commissioner of the Social Security Administration that she was not disabled. Dkt. 1. Plaintiff moved for judgment on the pleadings. Dkt. 8. The Commissioner responded and cross-moved for judgment on the pleadings, to which Plaintiff replied. Dkts. 10, 11. For the reasons that follow, the Court denies Plaintiff's motion and grants the Commissioner's cross motion.

[1] Pursuant to the Western District of New York's November 18, 2020 Standing Order regarding the naming of plaintiffs in Social Security decisions, this decision and order identifies Plaintiff by first name and last initial.

## PROCEDURAL HISTORY

This action originates from Plaintiff's applications for Supplemental Security Income ("SSI"), filed on January 6, 2015, and December 21, 2017, respectively.[2] Tr. 19, 216.[3] Plaintiff's application was initially denied, *id.* at 262–73, and she then requested a hearing before an administrative law judge ("ALJ"). *Id.* at 275–77. Following the hearing, ALJ John P. Costello issued a decision finding that Plaintiff was not disabled. *Id.* at 197–208. Plaintiff requested Appeals Council review, and on September 29, 2020, the Appeals Council ordered a new hearing. *Id.* at 214–17. Plaintiff appeared before ALJ Deanna L. Sokolski for a hearing, after which ALJ Sokolski issued an unfavorable decision. *Id.* at 104–40, 224–43. Plaintiff again requested Appeals Council review and, on December 20, 2022, the Appeals Council again remanded the matter to the ALJ for further proceedings. *Id.* at 254–57.

On May 31, 2023, Plaintiff, represented by counsel, appeared once more before ALJ Sokolski for a hearing. *Id.* at 62–103. On August 16, 2023, ALJ Sokolski issued a decision finding the Plaintiff was not disabled under the Social Security Act. *Id.* at 19–49. The Appeals Council denied review, and this appeal timely followed. *Id.* at 1–4; Dkt. 1.

---

[2] Plaintiff applied for SSI, which "provides benefits to each aged, blind, or disabled individual who does not have an eligible spouse and whose income and resources fall below a certain level." *Clark v. Astrue*, 602 F.3d 140, 142 (2d Cir. 2010) (quoting 42 U.S.C. § 1382(a)) (citation modified).

[3] The filing at Dkt. 6 is the transcript of the proceedings before the Social Security Administration. All references to Dkt. 6 are hereby denoted "Tr. __."

# LEGAL STANDARDS

## I. DISTRICT COURT REVIEW

Judicial review of disability claims under the Act is limited to whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013). The Commissioner's factual findings are conclusive when supported by substantial evidence. *See Biestek v. Berryhill*, 589 U.S. 97, 99 (2019). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation modified).

The Court does not determine *de novo* whether the claimant is disabled, but the Commissioner's conclusions of law are not given the same deferential standard of review. *See Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003). If there is a reasonable basis of doubt about whether the ALJ applied the correct legal standards, then upholding the determination "creates an unacceptable risk that a claimant will be deprived of the right to have his or her disability determination made according to correct legal principles." *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987); *see Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)) (the Court's review for legal error ensures "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the . . . Act.").

## II. DISABILITY DETERMINATION

Disability under the Act is determined under a five-step test. *See Bowen v. City of New York*, 476 U.S. 467, 470–71 (1986); 20 C.F.R. § 416.920. First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). "Substantial gainful activity" is work activity that involves significant physical or mental activities and is normally done for pay or profit. *Id.* § 416.972. If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant cannot claim disability. *Id.* § 416.920(b).

Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of impairments that significantly limits the claimant's ability to perform basic work activities. *Id.* § 416.920(c). Absent such impairment, the claimant may not claim disability. *Id.*

Third, the ALJ must determine whether the claimant meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* § 416.920(d). If such criteria are met, then the claimant is declared disabled. *Id.* § 416.920(d).

Even if the claimant is not declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must determine the claimant's residual functional capacity ("RFC"). *Id.* § 416.920(e). The RFC is a holistic assessment of the claimant's medical impairments, both severe and non-severe, that evaluates the claimant's ability to perform physical or

mental work activities on a sustained basis, notwithstanding limitations for collective impairments. *Id.* § 416.945.

In the fourth step, the ALJ must determine whether the claimant has the RFC to perform past relevant work. *Id.* § 416.920(f). If the claimant is capable of performing past relevant work, then the claimant is not disabled. *Id.* § 416.960(b)(3). If the ALJ finds that the claimant is unable to perform past relevant work, the analysis proceeds to the fifth and final step. *Id.* § 416.920(g)(1).

In this final analytical step, the ALJ must decide whether the claimant is able to perform any other relevant work corresponding with her RFC, age, education, and work experience. *Id.* § 416.960(c). Here, the burden of proof shifts from the claimant to the Commissioner to prove that a significant number of jobs in the national economy exists that the claimant can perform given her RFC, age, education, and work experience. *Id.* §§ 416.920(g), 416.960(c); *see Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

## DISCUSSION

### I. THE ALJ'S DECISION

To begin, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 6, 2015. Tr. 22. The ALJ also found that Plaintiff suffered from the following severe impairments: "hand tendonitis, migraine headaches, myofascial pain syndrome, obesity, sleep apnea, congenital cardiac septal defect, weight loss with gastroesophageal reflux disease (GERD) / gastrointestinal disorder, narcolepsy, ovarian cysts, social phobia, anxiety, and

depression." *Id.* The ALJ concluded, however, that Plaintiff's severe impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 24–26.

After considering the entire record, the ALJ determined that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 416.967(b) with the following limitations:

> [Plaintiff can] never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. [She] can frequently handle and finger with the bilateral upper extremities[] and she must avoid all exposure to workplace hazards such as unprotected heights and dangerous moving machinery. [She] can perform simple[,] routine tasks in an environment involving simple work-related decisions, occasional workplace changes, and occasional interaction with supervisors, coworkers[,] and the public[] as part of the job duties; and [she] can perform a job that does not require driving a commercial vehicle.

*Id.* at 27.

The ALJ then found that Plaintiff had no past relevant work. *Id.* at 47. But the ALJ concluded that Plaintiff was not disabled because her age, education, work experience, and RFC allowed her to perform jobs existing in significant numbers in the national economy. *Id.* at 47–48. As such, according to the ALJ, Plaintiff had not been under a disability since January 6, 2015. *Id.* at 49.

## II. PLAINTIFF'S ARGUMENT

Plaintiff argues that the ALJ failed to apply properly the treating physician rule when evaluating the opinions of Sasha Nelson, M.D. *See* Dkt. 8-1 at 12–19. This Court disagrees.

## III. ANALYSIS

As Plaintiff's claim was filed before March 27, 2017, the ALJ was required to apply the treating physician rule. *See* 20 C.F.R. § 416.927. Under the applicable regulations, if a physician has engaged in the primary treatment of a claimant, "the [Social Security Administration] recognizes a treating physician rule of deference." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (citation modified) (quoting *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003)).

Generally, an ALJ determines that a treating physician's opinion is entitled to controlling weight if it is "well-supported [sic] by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." 20 C.F.R. § 416.927(c)(2); *see, e.g., Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019) (citing *Burgess*, 537 F.3d at 128).

If an ALJ finds, however, that a treating physician's opinion is entitled to less-than-controlling weight, the ALJ must expressly consider: "(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining evidence; and[] (4) whether the physician is a specialist." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (citation modified). An ALJ's failure to consider explicitly

these factors, often called "*Burgess* factors," is a procedural error. *See Estrella*, 925 F.3d at 95–96.

In addition, an ALJ must provide "good reasons" for the decision regarding the weight given to a treating physician's opinion. *Id.* The Second Circuit has instructed that courts applying this standard should not hesitate to remand when an ALJ does not comprehensively set forth such reasons for the weight assigned to a treating physician's opinion. *See Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). But if "a searching review of the record" assures the court "that the substance of the treating physician rule was not traversed," the court shall affirm the ALJ's decision. *Estrella*, 925 F.3d at 96 (quoting *Halloran*, 362 F.3d at 32).

Between February 27, 2018, and May 12, 2023, Dr. Nelson completed seven medical evaluations of Plaintiff. *See* Tr. 974, 972–73, 1172–77, 2115–16, 2127–35, 2610–11, 3364–69. While their forms varied—including employability assessments, treating medical source statements, and a 'doctor's note'—each found Plaintiff to face moderate to severe limitations in walking, sitting or standing, lifting or carrying, and pushing or pulling, in addition to significant limitations in twisting, stooping, crouching, and climbing stairs or ladders. *See generally id.* The treating or primary source statements each identified moderate to severe limitations in sustained concentration and memory or adaptation. *See id.* at 1173–74, 2133–34, 3365–66. And Dr. Nelson's most recent examination on May 12, 2023, indicated that Plaintiff was so hindered by depression and anxiety as to be "preclud[ed] [from] all performance in a regular work setting" for most sub-categories within

understanding, sustained concentration, social interaction, and adaptation. *Id.* at 3365–66. Given these findings, Dr. Nelson repeatedly concluded that Plaintiff was unable to work, primarily due to "severe, ongoing back pain," *id.* at 2116, in addition to "migraines" or "headaches," *id.* at 2611, 1172, and "fatigue[] [due to] narcolepsy," *id.* at 3364.

The ALJ evaluated each of these medical opinions, denying controlling weight and assigning "little weight" to all of them. *See id.* at 39–45. Plaintiff correctly points out, however, that "the ALJ provided largely [the] same [reasons] for rejecting each." Dkt. 8-1 at 14. More specifically, the ALJ rejected each opinion because they were either inconsistent with the other record evidence or not supported by Dr. Nelson's own examination findings.[4] *See, e.g.*, Tr. 39 ("Dr. Nelson's opinion does not warrant controlling weight because it is not consistent with the other substantial evidence in the record"); *id.* at 40 ("Dr. Nelson's treatment records do not support these limitations"). Plaintiff argues that, in doing so, the ALJ "did not explicitly consider all [of] the [*Burgess*] factors as required by the regulations." Dkt. 8-1 at 14.

This Court agrees that the ALJ did not "explicitly consider" the treatment, amount of evidence, or specialty factors. Beyond noting that "Dr. Nelson was a

---

[4] The ALJ repeatedly states that Dr. Nelson's opinions are "not well supported by medically acceptable clinical or laboratory techniques" before engaging in a detailed discussion of the inconsistencies with evidence or findings. *See, e.g.*, Tr. 40. Given the lack of discussion regarding techniques and the depth of the record analysis otherwise, this Court assumes this language was inserted *pro forma* as per 20 C.F.R. § 416.927(c)(2).

treating provider for [Plaintiff]" three times, *see* Tr. 40, 42, 43, the ALJ makes no reference to the frequency, length, nature, and extent of Dr. Nelson's treating relationship with Plaintiff. *See generally* id. at 27–47. The Second Circuit has held that "merely acknowledging the existence of treatment relationships is not the same as explicitly considering" the treatment factor. *Ferraro v. Saul*, 806 F. App'x 13, 15 (2d Cir. 2020) (summary order); *see also Jennifer H. v. Comm'r of Soc. Sec.*, No. 6:21-CV-6234, 2023 WL 2705235 at *10 (W.D.N.Y. Mar. 30, 2023) (rejecting an ALJ's brief acknowledgements of a treating relationship as "bare observations" which "did not satisfy the ALJ's duty to explicitly consider" the treatment factor). And the ALJ never acknowledges the breadth of Dr. Nelson's treatment and progress notes in the record, except to flag that treatment records from April 2021 onwards were not present.[5] *See* Tr. 40. Nor does the ALJ reference Dr. Nelson's specialization in internal medicine. *See generally* id. at 27–47.

But in weighing Dr. Nelson's opinion against his own examinations and other medical opinions, the ALJ appropriately addressed the consistency *Burgess* factor—and provided good reasons for his decision. An ALJ "may set aside the opinion of a treating physician that is contradicted by the weight of other record evidence" or "is internally inconsistent or otherwise uninformative." *Smith v. Berryhill*, 740 F.

---

[5] The ALJ appears to weigh these missing records against Dr. Nelson's opinion. *See* Tr. 40. But as Plaintiff correctly points out, *see* Dkt. 8-1 at 18, Dkt. 11 at 2, missing records are not a "good reason" to reject an opinion. *See Selian v. Astrue*, 708 F.3d 409, 420 (2d Cir. 2013) ("[T]he Commissioner has an affirmative duty to 'fill any clear gaps in the administrative record' before rejecting a treating physician's diagnosis") (quoting *Burgess*, 537 F.3d at 129).

App'x 721, 724 (2d Cir. 2018) (summary order). Here, the ALJ did just that, setting aside each of Dr. Nelson's opinions for their internal inconsistency.

For each of Dr. Nelson's six 'full' opinions on physical limitations, the ALJ explained that while "Dr. Nelson was a treating provider for the [Plaintiff], [Dr. Nelson's] treatment records do not support these limitations," citing to inconsistencies throughout Dr. Nelson's voluminous treatment record. Tr. 40, 42, 43. More specifically, the ALJ cited to examination notes finding Plaintiff to have "generally normal lower extremity strength and reflexes, no obvious weakness, a normal gait, and no distress," finding them inconsistent with Dr. Nelson's severe physical limitation findings. *Id.* And in the three instances where Dr. Nelson opined that Plaintiff had significant mental limitations, *id.* at 40, 43, 44, the ALJ contrasted them with Dr. Nelson's examination findings that Plaintiff was "tolerating [her] medication well," "happier in general," with "her anxiety and depression . . . well-controlled," and that "she was in no distress with a normal affect [and] linear thoughts." *Id.* at 43 (citing *id.* at 995).

Still, that the ALJ explicitly discussed one of the *Burgess* factors does not excuse failing to consider explicitly *all* of the factors as required. Specifically, the ALJ erred by not discussing the frequency, length, nature, and extent of treatment, the amount of medical evidence supporting the opinion, or whether Dr. Nelson was a specialist. This failure to consider explicitly the *Burgess* factors was a procedural error. *See Estrella*, 925 F.3d at 96.

But the Court's inquiry does not end there. As discussed above, an ALJ's error is harmless if "a searching review of the record assures [the Court] that the substance of the treating physician rule was not traversed." *Loucks v. Kijakzi*, No. 21-1749, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022) (citation modified) (citing *Estrella*, 925 F.3d at 96). In other words, the Court may affirm the ALJ's decision if "the record [] provides 'good reasons' for assigning 'little weight' to" Dr. Nelson's opinions. *Estrella*, 925 F.3d at 96 (citing *Halloran*, 362 F.3d at 32). The wealth of contradictory opinion evidence in the record indeed provides such reasons.

Dr. Nelson's opinions were inconsistent with the other opinion evidence in the record. Of the twelve additional medical opinions reviewed by the ALJ—of which she found six at least partly persuasive—none reached the same conclusions as to the extent of Plaintiff's disability. *See* Tr. 36–46. For example, the ALJ twice found Dr. Nelson's opinion that Plaintiff was moderately-to-severely limited in sustained concentration, memory, and adaptation to be contrary to the opinions of Christine Ransom, Ph.D., and Adam Brownfeld, Ph.D. *See id.* at 43, 44. On February 20, 2015, Dr. Brownfeld conducted a psychiatric examination of Plaintiff, finding her attention, concentration, and memory intact, concluding that she had only a "mild[] to moderate[]" limitation in dealing with stress that would not "be significant enough to interfere with [Plaintiff's] ability to function on a daily basis." *Id.* at 1335–37. And on February 8, 2018, Dr. Ransom completed an adult psychiatric examination of Plaintiff, similarly finding her attention, concentration, and immediate memory to be "intact," ultimately diagnosing only "mild psychiatric

conditions that will not significantly interfere with [Plaintiff's] ability to function on a daily basis." *Id.* at 821–23.[6]

While not directly addressed by the ALJ, Dr. Nelson's physical findings were also contradicted by the opinions of Alan Chu, D.O., and Harbinder Toor, M.D. After an internal medicine examination on February 8, 2018, Dr. Chu determined that Plaintiff was only mildly restricted in "prolonged standing and walking," with moderate restrictions in "squatting, bending [], heavy lifting, and carrying" as well as "activities requiring fine manipulations." *Id.* at 829. And an examination by Dr. Toor on April 26, 2021, found similar mild-to-moderate limitations in sitting and walking, lifting and carrying, and "fine motor activity." *Id.* at 2038. By contrast, Dr. Nelson's most recent evaluation was much more severe, finding that Plaintiff could only sit or stand for twenty minutes at a time for a total of two hours daily, never lift any weights ten pounds or greater, and could only rarely twist, stoop, or crouch. *Id.* at 3367–68.

Moreover, the RFC was largely consistent with Plaintiff's subjective complaints of back pain. Although the ALJ noted that there was "little objective evidence to support [Plaintiff's] reports of back pain," the ALJ still credited that pain through a "limitation to light work [that] is consistent with her subjective

---

[6] In discounting Dr. Nelson's comparatively extreme mental findings, the ALJ also cites to Dr. Ransom's more recent examination on April 26, 2021. Tr. 43–44. Although Dr. Ransom reaffirmed her attention, concentration, and memory findings, she found slightly more elevated psychiatric conditions that would "mildly interfere with [Plaintiff's] ability to function on a daily basis." *See id.* at 2048–51.

reports of pain and clinical findings." *Id.* at 39. And the ALJ rejected opinions that found no physical limitations at all, *see id.* at 1342 ("no [] medical limitation is suggested" in an examination by Dr. Toor in February 2015), for being inconsistent with "additional findings" of fine motor control limitations, such as Dr. Chu's February 2018 opinion. *Id.* at 38 (citing *id.* at 828–29).

This deference to Plaintiff's subjective complaints extended to mental limitations. The ALJ partially rejected Dr. Ransom's 2021 conclusion that Plaintiff had only mild mental limitations for being inconsistent with Plaintiff's complaints of "discomfort around crowds and anxiety when going out in public" and "evidence of a flat and blunted affect, poor insight, and impaired auditory recall." *id.* at 41 (comparing *id.* at 821 with *id.* at 1054, 1345). In doing so, the ALJ chose to include a "limitation to simple routine tasks" with "occasional interaction with others" in the RFC to accommodate those complaints. *Id.* at 41.

In sum, Dr. Nelson's opinions were inconsistent with the other medical opinion evidence in the record and with her own findings. As such, the ALJ had "good reasons" to assign that opinion "little weight." *See Estrella*, 925 F.3d at 96. And despite the exclusion of Dr. Nelson's opinions, the ALJ credited Plaintiff's subjective complaints to craft an RFC that was more restrictive than it could otherwise have been. *See Orlando A. v. Comm'r of Soc. Sec.*, No. 21-CV-339, 2023 WL 5344934 at *4 (W.D.N.Y. Aug. 21, 2023) (collecting cases holding that an RFC that is more restrictive than the underlying medical opinions is non-prejudicial and, thus, not grounds for remand). While the ALJ failed to discuss adequately the

frequency, length, nature, and extent of treatment and the amount of medical evidence supporting the opinion as required under the pre-2017 regulations, that failure was harmless error. *See Loucks*, 2022 WL 2189293, at *2.

## CONCLUSION

For these reasons, the Court **GRANTS** the Commissioner's cross motion for judgment on the pleadings (Dkt. 10) and **DENIES** Plaintiff's motion for judgment on the pleadings (Dkt. 8). The Clerk of the Court shall close this case.

SO ORDERED.

Dated: November 20, 2026
Buffalo, New York

JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE